UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DISABILITY LAW CENTER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| F.L. CHAMBERLAIN INTERNATIONAL | ) |
| SCHOOL, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

## I. INTRODUCTION

1. In its role as the designated Protection and Advocacy system for people with disabilities in the Commonwealth of Massachusetts, plaintiff, the Disability Law Center, Inc. ("DLC"), received information concerning serious allegations of abuse and neglect by staff against students at the F.L. Chamberlain International School ("Chamberlain") in Middleboro, Massachusetts. DLC protects and advocates for students with disabilities pursuant to its statutory authority under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act" or "PAIDD"), 42 U.S.C. § 15001, *et. seq.;* the Protection and Advocacy for Mentally Ill Individuals Act 42 U.S.C. § 10801 *et seq*. ("PAIMI"); the Rehabilitation Act 29 U.S.C § 794e ("PAIR"); and the Traumatic Brain Injury Act as part of the Children's Health Act of 2000 42 U.S.C. § 300d-53 ("PATBI"). As part of its investigation of those abuse and neglect allegations, DLC sought to conduct an onsite visit to the school. DLC sent Chamberlain a letter requesting a visit. DLC then engaged in a series of communications with Chamberlain discussing its Protection and Advocacy ("P&A") authority as well as scheduling a date for the

visit. DLC offered to adjust the timing of their visit to try to accommodate the school. Despite these communications, Chamberlain has refused to allow DLC access to its campus, students and staff. Chamberlain through their attorney has informed DLC it will let DLC know "when and if" they will allow DLC access. Chamberlain has refused to give DLC a timeline for this decision. Chamberlain is refusing to allow DLC access, citing privacy issues, lack of information, and questioning whether DLC is in fact the federally designated P&A for Massachusetts.

2. This action seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 15001, *et. seq.*, 42 U.S.C. § 10801 *et seq*.; 29 U.S.C § 794e; and 42 U.S.C. § 300d-53 to compel Chamberlain to allow DLC access to its facilities, students and staff in a timely manner so that DLC can promptly investigate the serious allegations of abuse and neglect. Chamberlain's refusal to allow access prevents DLC, as the federally designated Protection and Advocacy System for people with disabilities in the Commonwealth of Massachusetts, from fulfilling its statutory mandate of investigating allegations of abuse and neglect, as well as providing protection and advocacy services for individuals with developmental disabilities, individuals with mental illness, individuals with traumatic brain injuries, and individuals with other types of disabilities. Chamberlain's refusal to provide access irreparably harms DLC and its constituents.

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because it involves a federal question. Declaratory relief is sought pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391 and § 2201 because

the main office of Chamberlain is located within this District in Middleboro, Massachusetts.

## III.  PARTIES

5.	Plaintiff, Disability Law Center, Inc., is a private non-profit Massachusetts corporation mandated by Congress and designated by the Commonwealth of Massachusetts to provide protection and advocacy services to individuals with developmental disabilities pursuant to 42 U.S.C. § 15001 *et seq.*; individuals with mental illness pursuant to 42 U.S.C. § 10801 *et seq.*;  individuals with disabilities other than developmental disabilities or mental illness pursuant to 29 U.S.C § 794e; and individuals with traumatic brain injuries pursuant to 2000 42 U.S.C. § 300d-53.  DLC's main office is located in Boston, Massachusetts.  As the Commonwealth's designated Protection and Advocacy system, DLC is statutorily authorized to investigate incidents of alleged abuse, neglect, and civil rights violations of persons with developmental disabilities, mental illness, traumatic brain injuries and other disabilities within Massachusetts.

6.	Defendant, F.L. Chamberlain International School, is a Massachusetts private, approved special education school.  According to its website, Chamberlain offers diagnostic programming, therapy and psychiatric care among other special education services and related services.  According to 2014 data from the Massachusetts Department of Elementary and Secondary Education ("DESE"), Chamberlain has 83 students ranging from grade six until grade twelve.  In DESE's latest program review, it reviewed fifteen student records from Massachusetts, as well as sent 30 surveys to parents of students with disabilities.  This information shows Chamberlain enrolls a significant number of students with disabilities. Upon information and belief, the overwhelming majority of students at Chamberlain are individuals

with disabilities. Chamberlain's main office is located on its campus at One Pleasant Street, Middleboro, Massachusetts 02346.

## IV. FACTUAL ALLEGATIONS

7. In May 2015, DLC received a complaint from a mother of a student at Chamberlain, alleging abuse and neglect of students with disabilities at that school. Along with the complaint received from this concerned relative, DLC also received a copy of a video of the complainant's child. In that video, her son complained about the way in which he had been treated at the school. The mother had initially been reluctant to disclose her name publicly for fear of retribution against herself or her son, but is willing to be identified at the request of this Court. As DLC began to investigate these claims, it received another complaint to the system from a former student who attended the school for approximately two years. The actions of these reporters in contacting DLC constituted a "complaint" to the Protection and Advocacy System, pursuant to 42 U.S.C. § 15043(a)(2)(B).

8. In particular, DLC received complaints from the parent and former student of medication overdoses where students ended up in comas, sexual assault by staff, denial of medical care following suicide attempts, and inappropriate use of restraint and seclusion including throwing students to the floor and using restraint as punishment for crying.

9. DLC commenced its investigation of these allegations of abuse and neglect by interviewing the concerned relative and former student. DLC also reviewed records provided by these individuals.

10. DLC informed Chamberlain of having received a complaint to the system and requested access to its campus, staff and students to investigate the bases of these serious

allegations.[1]  DLC explained its legal authority to visit the campus and interview staff and students pursuant to 42 U.S.C. §15043 and 45 C.F.R. §1386.22 (PAIDD), 42 U.S.C. § 10805 and 42 C.F.R. § 51.42 (PAIMI), 29 U.S.C § 794(e) (PAIR), and 42 U.S.C. § 300d-53 (PATBI), as well as supporting case law.

11.  DLC faxed this letter to Chamberlain's main office on Monday, May 11, 2015 and also mailed the letter via overnight mail.   In its letter, DLC requested to visit the school on Friday, May 15, 2015.

12.  DLC was then contacted by Chamberlain's counsel on Tuesday, May 12, 2015 and engaged in communications with its counsel in the days following.

13.  DLC offered to postpone its visit until Wednesday, May 20, 2015.   In response, Chamberlain informed DLC through its counsel that they had a licensing review visit that day and were not willing to have DLC conducts its site visit that day.

14.  DLC made one more attempt to schedule its visit and get a more concrete answer from Chamberlain on May 15, 2015.   In an attempt to avoid disrupt the licensing visit and to try to get an agreed upon date for the site visit and avoid the need for litigation, DLC offered to visit the school on Tuesday, May 19, 2015, but that proposal was also rejected by Chamberlain.

15.  Chamberlain declined to provide DLC access to their campus, staff and students, stating privacy issues, lack of information and questioning that DLC is the federally designated P&A for Massachusetts.   Chamberlain through their attorney has informed DLC it will let DLC know "when and if" they will allow DLC access.   Chamberlain has refused to give DLC a

---

[1]In its initial access request, DLC did not seek student records but in the usual course of such an investigation, DLC may be seeking to review student records pursuant to its P&A authority.

timeline for this decision

16. On Monday May 18, 2015, DLC asked Chamberlain for a list of contact information for parents and guardians of the students at Chamberlain, informing the school that such information is necessary in order for DLC to meet its obligations under 42 USC § 15043 (a)(2)(I)(iii)(III) to inform families of the investigation and that such directory information is not protected information under the educational privacy laws. To date, Chamberlain has not responded to that request or provided DLC with the requested contact information.

17. DLC's efforts to obtain access to the campus, staff and students through direct negotiation with Chamberlain were ultimately unsuccessful. Chamberlain's refusal to afford access to DLC to visit the campus and interview students and staff, prevents DLC from being able to fulfill its federal mandate to investigate abuse and neglect of people with disabilities and determine:

    a. the basis of the nature and content of the complaints;

    b. the nature and extent of past allegations and whether they are currently continuing;

    c. whether the Chamberlain School staff who perpetrated the alleged abuses are still employed by Chamberlain;

    d. whether students' rights to be free from abuse and neglect are protected; and

    e. whether there are appropriate procedures in place to prevent incidents of abuse and neglect.

18. As a result, DLC is being irreparably harmed because it cannot meet its statutory obligation to provide "protection and advocacy" services to current and former Chamberlain school students, pursuant to PAIDD, 42 U.S.C. §15001 *et seq.*, PAIMI, 42 U.S.C. § 10801 *et*

*seq.*, PAIR, 29 U.S.C § 794e, and PAIMI, 42 U.S.C. § 300d-53.

## IV. CLAIM FOR RELIEF: DENIAL OF DLC STATUTORY MANDATE TO INVESTIGATE ABUSE AND NEGLECT

19. Plaintiff realleges and incorporates by reference paragraphs 1-18 of the Complaint.

20. When Congress enacted the DD Act, 42 U.S.C. § 15001 *et seq.*, it found that individuals with developmental disabilities are vulnerable to abuse and neglect. The DD Act mandates that designated Protection and Advocacy systems such as the Disability Law Center have access to those individuals and their records. The P&A system is a nationwide network of disability rights agencies, which are mandated and designated for every state and territory of the United States of America, under the DD Act, to investigate and remedy abuse and neglect of persons with developmental disabilities, and provide them with legal representation and advocacy services. *See, e.g.,* 42 U.S.C. § 15043 (a)(2)(A)(i). The DD Act does not limit P&A investigative access rights to any particular setting. The DD Act gives the P&A authority to protect and advocate for individuals with a developmental disability in any setting within the state that provides "care, treatment, services and habilitation." 45 C.F.R. 1386.19. As part of its Congressional mandate, the DLC is authorized to: investigate incidents of abuse and neglect of individuals with developmental disabilities and mental illness if the incidents are reported to the P&A, or if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 15043(a)(2)(B) (emphasis added); 42 U.S.C. § 10805(a).

21. In addition, through the PAIMI Act, Congress mandated the creation of a Protection and Advocacy organization for each state, for the purpose of investigating abuse and neglect of persons with mental illness and providing them with legal representation and advocacy services. *See* 42 U.S.C. §§ 10801. To accomplish this goal, Congress granted broad

7

investigative access rights to the P&As.  *See* 42 U.S.C. § 10805(a).   As part of its Congressional mandate, the DLC is authorized to: investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the P&A, <u>or</u> if there is probable cause to believe that the incidents occurred, 42 U.S.C. § 10805(a).   In addition, the, P&A does not need to make a "threshold showing of mental illness" to use its PAIMI authority.  *See Connecticut Office of Protection & Advocacy v. Hartford Bd. Of Education*, 464 F.3d 229 (2nd Cir. 2006) and *Michigan Protection & Advocacy Service v. Miller*, 849 F. Supp. 1202 (W.D. Mich. 1994)

     22. Congress understood that there were a large number of vulnerable people with disabilities who were not covered by the PAIDD or PAIMI programs.   In response to that concern, Congress enacted the Protection and Advocacy of Individuals Rights ("PAIR") program, 29 U.S.C. § 794e. Under the PAIR program, DLC is authorized to investigate abuse and neglect of individuals with disabilities other than mental illness and developmental disabilities.  *See* 29 U.S.C § 794(e)(f)(2) (stating that P&A's have the same investigation authorities for people who meet the definition set forth in 29 U.S.C § 794e(a)(1)(b) as the P&A has for people with developmental disabilities);

     23. Congress also enacted a P&A program to protect the rights of investigate allegations of abuse and neglect of individuals with traumatic brain injuries, the Protection Advocacy of Individuals with Traumatic Brain Injury ("PATBI"), 42 U.S.C. § 300d-53 ("PATBI"). In establishing the P&A authority under both the PAIR and PATBI programs, Congress incorporated by referenced the authority under the then existing PAIDD program. *See* 42 U.S.C. § 300d-53(k) (stating that P&A's have the same investigation authority for people with traumatic

8

brain injury as it does for people with developmental disabilities.).

24. As part of its Congressional mandate, the DLC is authorized to: pursue administrative, legal and other appropriate remedies on behalf of people with developmental disabilities, mental illness and other disabilities to ensure their protection. 42 U.S.C. § 15043(a)(2)(A)(i); 42 U.S.C. 10805(a)(1)(B); 29 U.S.C § 794(e)(f)(3); 42 U.S.C. § 300d-53(b).

25. Defendant, Chamberlain, has violated and continues to violate the rights of the Plaintiff to have access to information and records and to pursue legal remedies on behalf of individuals with developmental disabilities, as guaranteed by the Developmental Disabilities Assistance and Bill of Rights Act (PAIDD), the Protection and Advocacy for Mentally Ill Individuals Act (PAIMI), the Rehabilitation Act (PAIR), and the Traumatic Brain Injury Act within the Children's Health Act of 2000 (PATBI).

26. Due to Chamberlain's refusal to comply with access provisions of the Acts listed in section 18 of this complaint, DLC has suffered, and will continue to suffer irreparable harm for which there is no remedy at law, as it is prevented from carrying out one of its core responsibilities: "investigat[ing] incidents of abuse and neglect of individuals with developmental disabilities." 42 U.S.C. § 15043 (PAIDD); 42 U.S.C. § 10805(a) (PAIMI); 29 U.S.C § 794(e)(f)(2) (PAIR); 42 U.S.C. § 300d-53(k) (PATBI).

27. Unless Chamberlain is enjoined from refusing to provide the access requested by DLC, students at the F.L. Chamberlain International School may continue to be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(1) Set this matter for a hearing on Plaintiff's request for a preliminary injunction;

(2) Both preliminarily and permanently enjoin Defendant Chamberlain from refusing to provide DLC with access to their campus, students and staff, and to otherwise cooperate with DLC's efforts to carry out its statutory duties with respect to investigating the allegations of abuse and neglect, including enjoining Chamberlain from refusing to provide contact information for parents and guardians of the students at the school.

(3) Both preliminarily and permanently enjoin Chamberlain from interfering, in any way, with DLC's investigation of the allegations of abuse and neglect.

(4) Declare that the failure of Chamberlain to provide access to DLC, thereby preventing Plaintiff from carrying out its statutory duties to investigate the allegations of abuse and neglect, violates the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq*. (PAIDD); the Protection and Advocacy for Mentally Ill Individuals Act 42 U.S.C. § 10801 *et seq*. (PAIMI); the Rehabilitation Act 29 U.S.C § 794e (PAIR); and the Traumatic Brain Injury Act within the Children's Health Act of 2000 42 U.S.C. § 300d-53 (PATBI).

(5) Declare that DLC is authorized to represent current and/or former students concerning issues of abuse and neglect.

(6) Order Defendant Chamberlain to cooperate with record requests if and when they are sought pursuant to P&A statutes.

(7) Declare that DLC is the prevailing party for the purpose of attorney fees.

(8) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

| | |
|---|---|
| Dated: May 21, 2015 | /s/ Erin Hehn_____<br>Erin E. Hehn, BBO #684837<br>Disability Law Center, Inc.<br>11 Beacon Street, Suite #925<br>Boston, MA 02108<br>(617) 723-8455<br>ehehn@dlc-ma.org |
| Dated: May 21, 2015 | __/s/ Stanley Eichner_____<br>Stanley J. Eichner, BBO # 543139<br>Disability Law Center, Inc.<br>11 Beacon Street, Suite #925<br>Boston, MA 02108<br>(617) 723-8455<br>seichner@dlc-ma.org |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the EFC system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 21, 2015.

_/s/ Erin Hehn_____