# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DISABILITY LAW CENTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-11888 |
| | ) | |
| F.L. CHAMBERLAIN INTERNATIONAL | ) | |
| SCHOOL., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

## I.  PRELIMINARY STATEMENT

Plaintiff Disability Law Center, Inc. ("DLC"), brings this action for declaratory relief pursuant to 28 U.S.C. § 2201 and a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) as a result of the Defendant, Chamberlain International School's ("Chamberlain") unlawful refusal to grant DLC access to the campus, students and staff at Chamberlain. Specifically, DLC is requesting to visit the campus as well as interview staff and interview students.   DLC has also requested the contact information for the guardians of all students so that DLC can inform them of its investigation.[1]   DLC further requests that this Court enjoin Chamberlain from interfering, in any way, with DLC's investigation into abuse or neglect that may have occurred at the school.

DLC is likely to succeed on the merits of its claim that Chamberlain's actions were

---

[1]  DLC has not at this time requested documents other than guardian contact information.   DLC planned to visit the campus and seek relevant records after following the procedures under 42 U.S.C. § 15403 (a)(2)(I)(iii)(III).

in clear contravention of statutory and case law governing record access by Protection and Advocacy organizations ("P &As"). DLC relies on several statutes to support its position. DLC protects and advocates for students with disabilities pursuant to its statutory authority under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act" or "PAIDD"), 42 U.S.C. § 15001, *et. seq.*, the Protection and Advocacy for Mentally Ill Individuals Act 42 U.S.C. § 10801 *et seq.* ("PAIMI"); the Rehabilitation Act 29 U.S.C § 794e ("PAIR"); and the Traumatic Brain Injury Act within the Children's Health Act of 2000 42 U.S.C. § 300d-53 ("PATBI").

DLC is likely to succeed on the merits of its claim that the Defendant's refusal to provide access is unlawful. DLC, as the Protection and Advocacy organization for Massachusetts, is entitled under federal law to the access that is being requested. Defendant's continue1d refusal of access will cause DLC to suffer irreparable harm in that DLC will be unable to fulfill its statutory mandate to investigate abuse and neglect and provide protection and advocacy services to individuals with developmental disabilities, individuals with mental illness, individuals with traumatic brain injuries and individuals with other disabilities who may be at risk of abuse and neglect. In contrast, Defendant Chamberlain will suffer no harm through allowing DLC access because allowing access to the Protection and Advocacy is required by federal law. Lastly, the public interest will be served, not harmed, by DLC being given access to the campus, students, staff and records and being able to fulfill its statutory mandate to protect vulnerable individuals from abuse and neglect.

## II.  STATEMENT OF THE FACTS

In May of 2015, DLC spoke with a mother of a student diagnosed with Autism Spectrum Disorder who currently attends the Chamberlain school.   The mother had initially been reluctant to disclose her name publicly for fear of retribution against herself or her son, but is willing to be identified at the request of this Court.   The parent communicated her concern that her son is the subject of abuse and neglect at the school. More specifically, the parent alleged to DLC that Chamberlain had overmedicated her child, resulting in a coma and hospitalization, and that her child had made multiple suicide attempts, for which Chamberlain had denied in-patient treatment.

In May of 2015, DLC also spoke with a former student of Chamberlain who attended the school for about two years.   She told DLC in detail the abuse she suffered while at Chamberlain and the abuse she witnessed of other students including sexual abuse by staff members, restrained against a wall with bands, being thrown to the floor and being put in basket holds for crying.

On Monday, May 11, 2015, DLC faxed and sent via overnight mail a letter requesting to visit Chamberlain on Friday, May 15, 2015.   Between May 12, 2015 and May 18, 2015, a series of phone calls and emails between DLC and counsel for the Defendant ultimately led to the Defendant denying DLC access, including to "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual" in order to carry out its investigation mandate.   42 U.S.C. § 15043(a)(2)(H).

In this May 11, 2015 letter, DLC outlined its statutory authority to access the school and records.   DLC also informed Chamberlain that it was acting pursuant to a complaint to the system.   This letter was followed by emails and conversations with counsel for Chamberlain in which DLC provided the statutory authority and case law that entitles DLC to access the campus, students and staff.   In an emails dated May 14, 2015 and May 18, 2015 counsel for the Defendant stated that the Defendant was refusing to provide access to DLC at this time and would let DLC know "when and if" they would allow access.   Counsel for the Defendant did not provide DLC with a timeline for when they would make this decision.   Defendant cited privacy issues for its students and staff as well as lack of information and mistrust that DLC is in fact the P&A.   Subsequent efforts to resolve the impasse were not successful.

DLC further requested a list of students and their guardians' contact information on May 18, 2015 as required by statute.   DLC has yet to receive a response from counsel for the Defendant.

To date, DLC has been unable to access Defendant's campus, students or staff, nor has DLC receive a list of guardian contact information.   DLC is therefore unable to conduct an investigation as required by statute to determine whether students are at risk of abuse and neglect, and whether there are appropriate procedures in place to prevent further incidents of abuse and neglect.

## III.   ARGUMENT

### A.  Background on the P & A System

When Congress enacted the DD Act, 42 U.S.C. § 15001 *et seq*., it found that individuals

with developmental disabilities are vulnerable to abuse and neglect. In order to protect this vulnerable population, the DD Act creates a strong and independent Protection and Advocacy system. The P&A system is a nationwide network of disability rights agencies, which are mandated and designated for every state and territory of the United States of America, under the DD Act, to investigate and remedy abuse and neglect of persons with developmental disabilities, and provide them with legal representation and advocacy services. *See, e.g.,* 42 U.S.C. § 15043 (a)(2)(A)(i). P &As such as the Disability Law Center have access to those individuals and their records by statute in order to fulfill its mandate to protect and advocate for individuals with disabilities. The DD Act does not limit P&A investigative access rights to any particular setting. Rather, it gives the P&A authority to protect and advocate for individuals with a developmental disability in any setting within the state that provides "care, treatment, services and habilitation." 45 C.F.R. 1386.19. As part of its Congressional mandate, the DLC is required to investigate abuse and neglect of people with disabilities. *See* 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a).

Following the enactment of PAIDD, Congress was also concerned about abuse and neglect of individuals with mental illness in facilities. The Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act") was passed in response to Congressional hearings detailing the abuse and neglect suffered by individuals with mental illness, particularly those in facilities. *See e.g.* 42 U.S.C. §§ 10801(a) (1)-(3), 10802 (4)(B). Through the PAIMI Act, Congress mandated the creation of a Protection

and Advocacy organization for each state, for the purpose of investigating abuse and neglect of persons with mental illness and providing them with legal representation and advocacy services. *See* 42 U.S.C. §§ 10801. To accomplish this goal, Congress granted broad investigative access rights to the P&As. 42 U.S.C. § 10805(a).

Further, DLC has an obligation to investigate abuse and neglect of individuals with disabilities who do not meet the definition in PAIDD and PAIMI under PAIR. See 29 U.S.C § 794e(a)(1)(B). The PAIR Act gives P&As the same investigation authority for people who meet this definition as the P&A has for people with developmental disabilities in 42 U.S.C. § 15043(a)(2)(B) and 42 U.S.C. § 10805(a).

Lastly, DLC has the authority to investigate abuse and neglect of individuals with traumatic brain injuries under PATBI. *See* 42 U.S.C. § 300d-53(k). Similar to PAIR, the PATBI Act gives the same broad investigation power to the P&As for people who have traumatic brain injuries as the P&A has for people with developmental disabilities. *See* 42 U.S.C. § 15043(a)(2)(B) and 42 U.S.C. § 10805(a).

B. <u>The Plaintiff Meets the Requirements For a Preliminary Injunction</u>

In order for a preliminary injunction to issue, the Court must determine that (1) plaintiff has exhibited a likelihood of success on the merits; (2) plaintiff will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the defendant; and (4) the public will not be adversely affected by the granting of the injunction. <u>See W Holding Co. v. AIG Ins. Co.</u>, 748 F. 3d. 377, 384 (1st Cir. 2008). According to the 1st Circuit, the first prong is the most important. *Id.* Plaintiff meets these requirements for a preliminary injunction.

1. <u>DLC is Likely to Succeed On the Merits of Its Claim That Chamberlain's Actions Are Unlawful.</u>

   a. <u>As the Protection and Advocacy Organization, DLC has a Right to Seek Access and Records in Order to Conduct an Investigation</u>.

   i. DD Act

When Congress enacted the DD Act, 42 U.S.C. § 15001 *et seq*., it found that individuals with developmental disabilities in facilities such as the F.L. Chamberlain International School are vulnerable to abuse and neglect. The DD Act mandates that the P&A have access to those individuals and their records. Further. the DD Act does not limit P&A investigative access rights to any particular setting and gives the P&A authority to ensure the protection of the rights of any individual with a developmental disability within the state, without regard to his or her living arrangement or location in which services are provided. 42 U.S.C. § 15043(a)(2)(A)(i). As part of its Congressional mandate, the DLC is authorized to "investigate incidents of abuse and neglect of individuals with developmental disabilities and mental illness if the incidents are reported to the P&A, <u>or</u> if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a) (emphasis added).

   ii. PAIMI Act

Congress modeled the PAIMI Act 42 U.S.C. § 10801 *et seq*. after PAIDD and created to protect individuals with mental illness from abuse and neglect. *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 310 (D. Conn. 2003). Similar to PAIDD, P & As under the PAIMI Act are mandated by Congress to investigate

and remedy abuse and neglect of persons with mental illness and provide them with legal representation and advocacy services. *See* 42 U.S.C. § 10801(b) and 42 U.S.C. § 10805 (a) (1)(A) - (C). The PAIMI Act mandates that designated Protection and Advocacy systems such as the Disability Law Center have access to those individuals and their records. *See* 42 U.S.C. § 10805(a) (3)-(4).

As part of its Congressional mandate, the DLC is authorized to investigate incidents of abuse and neglect of individuals with mental illness if it receives a complaint[2], or if there is probable cause to believe that such incidents may have occurred. *See* 42 U.S.C. §10805(a)(1)(A). The complaint and probable cause standards constitute two different bases for action, either one of which is sufficient to invoke P&A investigatory authority, including the right to access records. In this case, DLC received multiple complaints to the system through Ms. Mazer and a former student at Chamberlain. Based on the serious nature of the allegations by the family and former student, DLC is thereby authorized to investigate the alleged incidents of abuse and neglect, and to obtain records relevant to the investigation.

### iii. PAIR Act

Further, under PAIR, DLC has an obligation to investigate abuse and neglect of individuals with disabilities who do not meet the definition in PAIDD and PAIMI. See 29 U.S.C § 794e(a)(1)(B). The PAIR act gives P&As the same investigation authorities for

---

[2] Under the applicable regulations, a **"complaint"** is defined as: "Complaint includes but is not limited to any reports, whether formal or informal, written or oral, received by the system including media accounts, newspaper articles, telephone calls (including anonymous calls), from any source alleging abuse or neglect of an individual with a mental illness" 42 C.F.R. § 51.2. This definite is identical for people with developmental disabilities under the DD Act at 45 C.F.R. § 1386.19.

people who meet this definition as the P&A has for people with developmental disabilities in 42 U.S.C. § 15043(a)(2)(B). 29 U.S.C. § 794e (f0(2).

iv. PATBI Act

Lastly, DLC has an obligation to investigate abuse and neglect of individuals with traumatic brain injuries under PATBI. 42 U.S.C. § 300d-53(k).   The PATBI Act gives P&As the same investigation authorities for people who have traumatic brain injuries as the P&A has for people with developmental disabilities in 42 U.S.C. § 15043(a)(2)(B).

b. <u>Chamberlain Cannot Refuse to Allow DLC access and give DLC Records by Relying on the Student Privacy Concerns or Other Reasons</u>

Chamberlain has not provided DLC with access to its school, nor has it provided DLC with a list of guardian contact information, citing privacy concerns among many other reasons. The Defendant asserts that such access and records are private information. Defendant has not cited any applicable law; however the relevant privacy laws are FERPA, IDEA and 603 C.M.R. § 23.07.   Assuming, without conceding, that all of the requested access and records fall within the scope of these statutes, it is still not exempt from disclosure under the PAIMI, PAIDD, PAIR and PATBI Acts.

In *Connecticut Office of Protection & Advocacy v. Hartford Bd. Of Education*, the Second Circuit held that P&A authority supersedes FERPA and the IDEA and that the P&A is authorized to (1) access a school for students with disabilities to investigate complaints of abuse and neglect and (2) obtain a directory of students with contact information for their parents or guardians.  *Connecticut Office of Protection & Advocacy v. Hartford Bd. Of Education,* 355 F.Supp.2d 649, 664 (2nd Cir. 2006). Additionally, "the scope of access granted to the P&A system for the purpose of executing its investigation function has been interpreted as being broad."  *Equip for Equal. Inc. v. Ingalls Mem. Hosp*. 292 F. Supp. 2d.

1086, 1094 (N.D. Ill. 2003).

Further, to the extent that any Massachusetts state laws apply to student access and records, PAIDD, PAIMI, PAIR and PATBI would supersede it. *See* U.S. Const. art. VI, cl. 2; *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819); *Hines v. Davidowitz*, 312 U.S. 52 (1941). Thus, the Plaintiff is likely to prevail on the merits of its claim that it is entitled to the records it is seeking.

2.   DLC, as Well as Current and Future Students at Chamberlain Will Suffer Irreparable Harm If DLC Does Not Receive Access.

DLC cannot fulfill its statutory obligation to investigate allegations of abuse and neglect and provide protection and advocacy services if it cannot obtain access and records from Chamberlain. "Courts have concluded that a protection and advocacy system's inability to meet its federal statutory mandate…constitutes irreparable harm." *Connecticut Office of Protection & Advocacy v. Hartford Bd. Of Education,* 355 F.Supp.2d 649, 653 (2nd Cir. 2006). Further, courts around the country have held that denying a P & A access to records constitutes irreparable harm because "the P&A is being prevented from pursuing fully its right to access records ... in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring." *Iowa Protection an Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 635 (S.D. Iowa. 2001); *see also*, *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski,* 131 F. Supp. 2d 1039, 1051 (E.D. Wisc. 2001); *Advocacy Center v. Stalder*, 128 F. Supp. 2d 358, 367-68 (M.D. La., 1999).

Chamberlain's refusal to allow DLC access and provide the guardian contact information frustrates DLC's function as a P & A. Denying access to a P&A "defeats the very purpose of PAIMI and the DD Act to provide effective protection and advocacy services to mentally ill and developmentally disabled persons." *Michigan Protection and Advocacy Service v. Miller,* 849 F.Supp. 1202, 1207 (W.D. Mich. 1994). If DLC is not

allowed access and given guardian information, the investigation cannot proceed.    In addition, unless Chamberlain is ordered to provide the documents and access requested by DLC, students at the school may continue to be irreparably harmed.   The sooner the investigation can take place, the sooner potential future abuse or neglect can be prevented.

     3.   There Will Be No Harm to Chamberlain Because There Will Be No Violation of the FERPA and IDEA

Assuming, without conceding, that the requested access and records fall within the scope of FERPA and IDEA, this Court may still find, as did the Second Circuit in *Connecticut Office of Protection & Advocacy,* that disclosure of the records to the P&A does not violate the terms of those statutes. *See Connecticut Office of Protection & Advocacy,* 355 F.Supp.2d at 660.   Under the PAIDD, PAIMI, PAIR and PATBI Acts, the P&A is bound to hold records confidential to the same extent as is the service provider, namely the Chamberlain School.   See 44 C.F.R. § 1386.22; 42 U.S.C. § 10806(a).   Thus, the records can be disclosed to the P&A under the PAIDD, PAIMI, PAIR and PATBI Acts without violating FERPA and IDEA.

     4.   The Public Interest Will be Furthered, Not be Harmed, by DLC Having Access to Chamberlain.

Congress passed the PAIDD and PAIMI Acts in response to overwhelming evidence that persons with disabilities in facilities are vulnerable to abuse and neglect.   Congress was also acutely aware that, in order to respond effectively to these conditions and seek redress, P&As need broad access to the individuals receiving services, the location where the individual received the services and records.   Congress thus enacted these statutes to provide extraordinary access to facilities, individuals and their records. Allowing facilities

to deny P&As access to their school and records would undermine the system. As the Court noted in *Iowa Protection and Advocacy v. Rasmussen,* "[t]o shield from independent review valuable records of this type of appraisal would directly contradict the expressly stated public policy of Congress." *Iowa Protection and Advocacy v. Rasmussen,* 206 F.R.D. 630, 635 (S.D. Iowa, 2001). Notably, Congress also found that state systems that were supposed to protect vulnerable individuals from abuse and neglect were often inadequate to the task. 42 U.S.C. 10801(a)(4). Thus, the P&A system provides a vital and independent check on state oversight and accreditation systems that often cannot or do not protect our most vulnerable citizens. The P&A system was conceived by Congress to fulfill exactly this role.

To allow Chamberlain to deny DLC access to its school, staff, students and requested records is to thwart the intent of a Congress seeking to ensure safe and humane conditions at schools like Chamberlain. The public interest in preventing harm to vulnerable individuals with disabilities will be furthered by DLC having access to Chamberlain and thus outweighs any purported harm to privacy laws.

    C.   The Plaintiff Meets the Requirements for Declaratory Relief

Plaintiff also requests declaratory relief in this matter under 28 U.S.C. § 2201 that Chamberlain violated PAIDD, PAIMI, PAIR and PATBI by refusing to grant DLC access. Plaintiff asserts that such a judgment from the Court will clarify the legal issue of P&A access and will provide relief from the controversy arising over DLC's right to access Chamberlain's campus, staff, students and records.

## CONCLUSION

For the reasons stated above, this Court should issue a preliminary injunction requiring Chamberlain to provide DLC with access to Chamberlain's campus, students, staff and records and issue declaratory relief that Chamberlain violated PAIDD, PAIMI, PAIR and PATBI when it denied DLC access. This Court should also issue a preliminary injunction prohibiting Chamberlain from interfering, in any way, with DLC's investigation into abuse and neglect.

Respectfully Submitted,

DISABILITY LAW CENTER, INC.
Plaintiff,

By its Attorneys,


_/s/ Erin Hehn_____

Dated: May 21, 2015                    Erin E. Hehn, BBO #684837
Disability Law Center, Inc.
11 Beacon Street, Suite #925
Boston, MA 02108
(617) 723-8455
ehehn@dlc-ma.org


___/s/ Stanley Eichner_____

Dated: May 21, 2015                    Stanley J. Eichner, BBO # 543139
Disability Law Center, Inc.
11 Beacon Street, Suite #925
Boston, MA 02108
(617) 723-8455
seichner@dlc-ma.org

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the EFC system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 21, 2015.

 /s/ Erin Hehn
(617) 723-8455